**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

BAYLEE BERNSTEIN, an individual

    Plaintiff(s),

v.

UNIVERSITY OF NORTHERN COLORADO;
UNIVERSITY OF NORTHERN COLORADO BOARD OF REGENTS

    Defendant(s).

**COMPLAINT WITH JURY DEMAND**

Plaintiff, Baylee Bernstein, who appears individually, hereby respectfully files this action against Defendants the University of Northern Colorado ("UNC" or ("School")) and the UNC Board of Regents ("Board") (collectively, "Defendants") through the undersigned counsel of record Kishinevsky & Raykin, Attorneys at Law, and states on information and belief as follows. This action seeks appropriate damages and costs.

## I.    JURISDICTION AND VENUE

1. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Federal question jurisdiction arises under the Americans With Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*).

2. Plaintiff Baylee Bernstein ("Plaintiff") is a resident of Clark County, Nevada.

3. Defendants are located in Weld County, Colorado.

4. All Defendants are Colorado residents.

5. The wrongful acts alleged by Plaintiff occurred in whole or in part in Arapahoe County, Colorado.

6. Venue is proper in this court under 28 U.S.C. § 1391(b)(2).

## II.    BACKGROUND FACTS

7. Plaintiff is currently a senior at UNC.

8. Plaintiff has been diagnosed with severe anxiety and depression.

9. She is on daily medications and attends therapy regularly as a result.

10. Plaintiff needs to complete needs to complete an off-campus internship worth 12-credits and complete an on-line course to qualify to graduate.

11. Plaintiff was living off campus in Greeley, Colorado for the fall semester of the 2020 school year with several other roommates.

12. On October 21, 2020, Plaintiff booked a flight to Las Vegas, Nevada to spend time with her mother who lives there.

13. Plaintiff was travelling to Las Vegas due to issues she was having with one of her roommates which was causing her a lot of anxiety.

14. The flight was scheduled to take-off on November 3, 2020.

15. Plaintiff lost her sense of taste on November 2, 2020.

16. Losing taste is a symptom of the novel coronavirus disease 2019 ("COVID" or "COVID-19").

17. Plaintiff was tested for COVID on November 2, 2020.

18. The test Plaintiff took on November 2, 2020 was not a rapid result test.

19. Plaintiff took an rapid result test on November 3, 2020.

20. Plaintiff received the results the same day and indicated that she tested positive for COVID.

21. Plaintiff immediately began suffering a panic attack due to her anxiety upon hearing this information.

22. Plaintiff believed she would get "very sick" from the virus and convinced herself she was going to "die alone."

23. Plaintiff could not get these pervasive thoughts out her head.

24. Plaintiff's roommates encouraged her to travel home to be with her mother during her panic attack and COVID diagnoses.

25. Plaintiff contacted her mother who encouraged her to travel home.

26. Plaintiff considered driving home, however, decided against it, as she believed it would be too dangerous to drive that distance in her current mental state.

27. Plaintiff would not have been able to complete the drive without having to stop and sleep somewhere on the way.

28. Plaintiff had no other means to get to Las Vegas besides flying.

29. Plaintiff flew to Las Vegas on November 3, 2020.

30. Plaintiff wore two masks and never removed them, did not eat or drink on the flight, did not speak with anyone on the flight and wiped her seat down with sanitary wipes before and after the flight.

31. Plaintiff distanced herself from other passengers on the flight by sitting in the back row by herself.

32. Plaintiff received a letter from UNC on November 5, 2020 alleging that she had violated the UNC's Code of Student Conduct ("BEAR Code") by flying home to Las Vegas on November 3, 2020.

33. The letter stated that Plaintiff would have a hearing on the allegations on November 11, 2020.

34. This caused Plaintiff to suffer from even more anxiety, to the point that she sent an email to UNC to see if she could have the hearing sooner.

35. Plaintiff explained in this email that she was suffering anxiety over this incident.

36. Mallory Tuhkanen ("Ms. Tuhkanen"), Graduate Assistant at UNC's Community Standards and Conflict Resolution Center, responded to Plaintiff and provided her with information to contact a counselor at the school.

37. Plaintiff was not able to get her hearing re-scheduled and met virtually with Ms. Tuhkanen on November 11, 2020.

38. During the hearing, Plaintiff was incredibly contrite, remorseful, apologetic and honest about her decision to fly home.

39. Plaintiff told Ms. Tuhkanen about her anxiety issues and the reasons she chose to fly home.

40. Ms. Tuhkanen expressed empathy for Plaintiff and told her she would have done the same thing.

41. One of Plaintiff's friends reached out to Ms. Tuhkanen after the hearing as a character reference and to further explain Plaintiff's issues with anxiety.

42. Ms. Tuhkanen stated she would include this in her final decision, however, this information was entirely omitted.

43. After the hearing, Ms. Tuhkanen informed Plaintiff that she would have a decision for her in two-weeks or less.

44. Plaintiff did not receive any correspondence from the School until December 14, 2020, nearly five-weeks after her hearing.

45. This caused additional stress and anxiety for Plaintiff to deal with during this time.

46. Plaintiff continued to attend classes virtually and finished the semester with straight As.

47. As a result of the hearing, Ms. Tuhkanen found Plaintiff responsible for violating UNC's BEAR code.

48. As punishment for the violation, Ms. Tuhkanen "suspended" Plaintiff for two-academic years, placed a hold on her transcripts, essentially making it impossible for her to transfer to a different school, issued a no-trespass order and threatened her with arrest if she set foot on campus, required her to write a "Pandemic Research and Reflection" paper, and

only then, be eligible for an additional hearing in the summer to 2020 to determine whether or not she will be allowed to re-enroll.

49. The School labeld this a "suspension," however, Plaintiff was essentially expelled, as there is no guarantee that she will be allowed to re-enroll once the "suspension" has ended.

50. Upon information and belief, numerous students from UNC have hosted and attended parties in violation of the BEAR Code and received much less severe penalties, including probation, for equally risky activities.

51. Plaintiff appealed Ms. Tuhkanen's decision on December 18, 2020 on the grounds that the "outcomes were inappropriate given the nature of the misconduct that was committed," one of the grounds of appeal permitted by the school.

52. Plaintiff again reiterated that the reason she chose to fly after testing positive for COVID was due to her extreme anxiety, including letting the school know that she had been seeing a therapist for several years after high school due to her anxiety.

53. The School did not respond to Plaintiff's appeal for nearly one month.

54. Plaintiff emailed and called the School to inquire as to when a decision on her appeal would be made.

55. The School stated they would get back to the Plaintiff, but never did so.

56. During this time, Plaintiff set-up an internship at the Avery Center in Greeley in which she would have received the twelve (12) necessary credits to graduate.

57. On January 13, 2021, nearly a month after Plaintiff submitted her appeal, the School rejected her appeal and found the sanctions appropriate.

58. The School included in its reasoning actions that Plaintiff partook in late October that were not at all relevant to the discipline she was facing which were also inaccurate statements and taken out of context.

59. The penalty Plaintiff received does not align with UNC's mission of the student conduct process, as it is purely punitive and is not "educational in nature and designed to promote students' learning and the wellbeing of our community."

60. Plaintiff plans on enrolling in a nursing program after she graduates.

61. Plaintiff would be able to enter into an accelerated 12-month program if she has a Bachelor's degree.

62. Without a Bachelor's degree, the program would take two (2) years to complete.

### III.   CLAIMS AND CAUSES OF ACTION

#### A.   FIRST CLAIM FOR RELIEF
*(VIOLATION OF SECTION 504 OF THE REHABILITATION ACT – AGAINST ALL DEFENDANTS)*

63. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

64. Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and its implementing regulations apply to recipients of federal financial assistance from the Department of Education. *See* 34 C.F.R. § 104.2. UNC receives such federal financial assistance and is thus subject to Section 504.

65. Among other things, Section 504 requires that:

    A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same states. C.F.R. § 104.4(b)(4).

66. With regards to postsecondary educational entities, 34 C.F.R. § 104.43 prohibits universities receiving federal funds from excluding, discriminating against, or otherwise denying benefits to qualified students on the basis of their handicap.

67. Moreover, any such university must "make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating , on the basis of handicap, against a qualified handicapped applicant or student." 34 C.F.R. § 104.44(a).

68. Education institutions have a "real obligation…to seek suitable means of reasonably accommodating a handicapped person and to submit a factual record indicating that it conscientiously carried out this obligation." Wong v. Regents of the Univ. of California, 192 F.3d 807, 817 (1999) (quoting Zukle v. Regents of the Univ. of California, 166 F.3d 1041, 1048 (9th Cir. 1999) and Wynne v. Tufts Univ. Sch. Of Med., 932 F.2d 19, 25-26 (1st Cir. 1991) (en banc)).

69. According to Section 504, "[d]isability means, with respect to an individual: A physical or mental impairment that substantially limits one or more of the major life activities of such individual…" 28 C.F.R. § 36.105(a)(a)(i).

70. Plaintiff was and is qualified to attend UNC.

71. Plaintiff is a qualified individual with a disability under Section 504 due to her severe anxiety.

72. Despite notice of Plaintiff's qualifying handicap, UNC intentionally discriminated against her, were deliberately indifferent to her rights, and intentionally denied her benefits solely on the basis of her disability when UNC expelled her.

73. Defendant UNC's violation of Plaintiff's rights under Section 504 caused Plaintiff to suffer damages, including but not limited to psychological, emotional, and reputational damages in addition to economic damages and the loss of educational and career opportunities, as well as attorney's fees incurred in this action.

### B. SECOND CLAIM FOR RELIEF
### (*VIOLATION OF TITLE II OF THE AMERICAN WITH DISABILITIES ACT – AGAINST ALL DEFENDANTS*)

74. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

75. Title II of the Americans with Disabilities Act ("Title II"), 42 U.S.C. § 12101, and its implementing regulations apply to public entities, such as UNC.

76. Title II bars public entities from discriminating against qualified individuals with a disability or, by reason of their disability, excluding them from participation in or denying the benefits of the services, programs, or activities of the public entity. 42 U.S.C. § 12131.

77. Plaintiff's conditions alleged herein constitute disabilities under Title II.

78. As explained above, Plaintiff was and is qualified to attend UNC.

79. Plaintiff was excluded from participation in or denied the benefits of UNC's services, programs, or activities.

80. That exclusion, denial of benefits, and discrimination was by reason of Plaintiff's disability.

81. Defendants retaliated against Plaintiff due to her disability for exercising her Constitutional right to travel.

82. Defendants' violation of Plaintiff's rights under Title II caused her to suffer damages, including but not limited to psychological, emotional, and reputational damages in addition to economic damages and the loss of educational and career opportunities and attorneys' fees and costs in this action.

## IV.     DAMAGES

83. The Defendants' discriminatory conduct alleged hereinabove has caused the Plaintiff the following damages:

    a. Lost pay, future wages, reduced wages, and benefits in amounts to be established at trial;

    b. Emotional upset, stress, and anxiety in an amount to be established at trial;

    c. Out-of-pocket expenses, litigation costs, and attorney fees in amounts to be established at trial.

## V.     REQUEST FOR RELLIEF

Plaintiff requests that the court enter judgment in her favor and against Defendants as follows:

84. Awarding the Plaintiff's special damages for front lost wages, benefits, and out-of-pocket expenses in amounts to be established at trial;

85. Awarding the Plaintiff general damages for emotional distress in an amount to be established at trial;

86. Punitive damages, pursuant to 42 U.S.C. 1981, 2000(e), in the maximum amount permitted by law;

87. Awarding the Plaintiff statutory and reasonable attorney fees, litigation expenses, and costs incurred in this action;

88. Awarding Plaintiff pre-judgment interest; and

89. Awarding the Plaintiff any additional and further relief that the court finds equitable, appropriate, or just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

*s/ Igor Raykin*
Igor Raykin, Esq. #43081
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 767-1846
E-mail: igor@coloradolawteam.com
Attorney for Plaintiff

*s/ Alan Davis*
Alan Davis, Esq. #49870
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 523-8106
E-mail: alan@coloradolawteam.com
Attorney for Plaintiff